**UNITED STATES DISTRICT COURT DISTRICT OF MINNESOTA**

| | |
|---|---|
| Bryan Stewart,<br><br>Plaintiff,<br><br>v.<br><br>Golden Victory Medical LLC,<br><br>Defendant. | Case No.: 0:22-cv-02145-ECT-LIB<br><br>**DEFENDANT GOLDEN VICTORY MEDICAL LLC'S STATEMENT OF THE CASE** |

Defendant Golden Victory Medical LLC ("GVM"), by and through its undersigned attorney, submits this Statement of the Case to comply with the Court's December 6, 2022 Pretrial Scheduling Notice and Order.

Gabriel Luther and Elizabeth Brown are absentee owners of GVM. Mr. Luther and Ms. Brown became very concerned about GVM's business operations. GVM engaged professionals such as attorneys in the health law area and experts in the health care business for advice.

In the summer or fall 2021, it became apparent that, amongst other things, GVM's third party vendor invoicing system was not functioning properly, that office procedures needed to be implemented to enhance efficiency; and, that GVM needed to be led by a professional with experience in health care management. It was concluded that the best way to achieve those goals was for GVM to hire a Chief Executive Officer ("CEO").

After a vetting process, which included CEO candidates being interviewed by GVM's attorneys, in November 2021, GVM entered into a written "at will" employment

agreement with Plaintiff Bryan Stewart ("Stewart") to act as its CEO ("Employment Agreement").

In January 2022, GVM received a notice from a Unified Program Integrity Contractor ("UPIC Contractor") that questioned the accuracy of invoices submitted to the Centers for Medicare and Medicaid Services (CMS). CMS informed GVM that it was suspending payments to it, pending resolution of its investigation of GVM's billing practices.

From the onset, GVM had concerns about Stewart's management skills. Stewart made it clear that he had no respect for Mr. Luther, Ms. Brown and for most of GVM's staff members.

A significant part of GVM's revenue comes from Medicare and Medicaid. Stewart was lackadaisical in taking steps to get GVM reinstated with CMS and did little to work toward resolving GVM's billing issues with CMS. To "jump start" the process of getting the billing process "on track", other of GVM's staff members took it upon themselves to do what they could to address the billing issues. Eventually, others at GVM, not Stewart, served as the catalyst to retaining Health Information Associates ("HIA") to help out in this area.

Stewart made it clear to GVM staff members that he intended to "take over" GVM. Not only was that action inconsistent with the term Employment Agreement, but such behavior created a hostile work environment.

The Employment Agreement provides:

> 5. No Authority to Contract. Employee shall not enter into any contract whatsoever on behalf of GVM, except as expressly authorized by GVM.

Yet, without securing GVM's permission, Stewart entered into a large contract with an information technology vendor whom it is likely, but presently unknown, that he may have had an undisclosed relationship. This technology has little value to GVM.

Again, without first securing GVM's permission, Stewart entered into a contract with a company, in which it is believed he was a principal, to provide human resource management consulting services for GVM, without disclosing the obvious conflict of interest.

Stewart was the cause of a hostile work environment.

At least five (5) of GVM's staff members complained to human resources about Stewart's behavior. Stewart was accused of engaging in rageful verbal tyrants and incessant criticism of staff members many times in the presence of other employees. One of the GVM's staff members who Stewart targeted, repeatedly broke down in tears in front of her colleagues after his ruthless attacks.

Stewart was accused of demonstrating a racist attitude toward staff members of color.

It is believed that Stewart has communicated information to CMS about GVM which is not true.

Based on Stewart's foregoing behavior, GVM's termination of Stewart's Employment Agreement was proper as a matter of law.

It is more likely than not that Stewart's motive for the instant litigation is out of spite for GVM terminating his Employment Agreement and/or to extort a settlement by pleading a False Claims Act claim.

In summary Stewart's employment was properly terminated for cause. Stewart is liable to GVM for damages attendant with the contracts that the Employment Agreement prohibited him from entering into and for tortiously interfering with GVM's business.

Respectfully submitted,

Dated: December 27, 2022

/s/ Mark J. Kallenbach

Mark J. Kallenbach, Esq. (146468)
2260 Ridge Drive, No. 13
Minneapolis, MN 55416
Tel.: (952) 593-3858
Fax.: (952) 406-8881
E-mail: markkallenbach@comcast.net

Attorney for Defendant Golden Victory Medical LLC