**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Bryan Stewart,

Plaintiff,

v.

Golden Victory Medical LLC,

Defendant.

Case No. 0:22-cv-02145-ECT-LIB

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

---

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, and in support of Plaintiff Bryan Stewart's ("Stewart") Motion for Default Judgment (the "Motion") against Defendant Golden Victory Medical LLC ("Defendant" or "Golden Victory"), states the following:

## I. INTRODUCTION

This breach of contract and False Claims Act retaliation action was originally filed with this Court on August 31, 2022. [ECF No. 1]. The parties litigated the case for a year, until Golden Victory's counsel brought a motion to withdraw, which was granted by Magistrate Judge Leo I. Brisbois on September 22, 2023 ("the Order"). [ECF No. 40]. The Order required Golden Victory to provide notice of retention of new counsel within 30 days of the Order. Golden Victory did not comply with the Order's instruction to obtain new counsel within 30 days of the date of the Order. Because a corporate defendant cannot litigate *pro se*, Golden Victory is in default. The Clerk of Court entered default against Golden Victory on December 4, 2023. [ECF No. 44]. Stewart now seeks entry of default

judgment by the Court against Golden Victory, and for damages to be determined by evidence and testimony presented at the hearing scheduled for January 16, 2024.

## II. FACTUAL BACKGROUND

The underlying facts supporting Stewart's Motion are fully set forth in his Complaint [ECF No. 1]. While the Complaint contains a full recitation of the facts, Stewart will summarize the key, relevant facts related to this Motion for the Court's convenience.

Stewart filed his Complaint against Golden Victory on August 31, 2022, seeking recovery for (1) violation of the retaliation provision of the False Claims Act, 31 U.S.C. § 3730 (h)(1), and (2) breach of contract. [ECF No. 1]. Golden Victory operates five clinics in four states and specializes in behavioral health, including mental health medication management, neurofeedback therapy, psychiatric and psychological assessments, therapy, and counseling. In November 2021, Stewart began employment with Golden Victory as its Chief Executive Officer ("CEO"). The co-owners of Golden Victory are Gabriel Luthor ("Luthor") and Elizabeth Brown ("Brown").

The patients at Golden Victory's clinics are insured through a combination of private and public-sector sources, including Medicare and Medicaid. Approximately 65% of the patients at Golden Victory are Medicare or Medicaid recipients. As a provider of services to Medicare and Medicaid recipients, Golden Victory is subject to regulation by the Centers for Medicare & Medicaid Services ("CMS"), which provides detailed criteria for the reimbursement of providers for services covered by Medicare & Medicaid.

In Stewart's first few months as CEO, he recognized immediate signs of flaws in the coding and billing processes at Golden Victory's clinics. Due to his concern that Defendant was violating federal law with respect to its reimbursement practices, Stewart authorized Defendant's general counsel to hire an independent third-party to conduct an audit of the coding and billing processes within the company.

Shortly after commissioning the audit, Stewart learned that the Las Vegas Golden Victory Clinic had been notified in December 2021 by CMS that the agency was suspending payments to the clinic due to evidence of overbilling. Under the terms of the suspension, claims would be processed but the proceeds would be placed in an escrow account pending resolution of an inquiry by CMS as well as the Internal Revenue Service ("IRS"). Luthor and Brown and their personal attorneys had engaged with the IRS and CMS for three months without informing Stewart. He learned the details of the investigation and suspension only after being provided the CMS initiating letter by Golden Victory's third-party billing company.

On April 28, 2022, the third-party auditor presented the summary of the results to Stewart and Defendant's general counsel, who in turn scheduled a full-scale virtual presentation to the ownership team of Luthor and Brown on May 2, 2022. Among other findings, the audit determined that the coding and billing accuracy levels were in the 32.44% range, in comparison with an industry standard of 95%. The errors included consistently erroneous CPT code usage, inadequate documentation to support coding assignments, improper use of telehealth practices, use of NPPs to perform service coded to physicians, misuse of the incident-to standard, frequent errors in the coding process

for neurofeedback, and incorrect documentation of time increments, among other violations of federal regulations.

On May 4, 2022, Stewart informed Brown and Luthor that the errors uncovered in the audit created a threat of recoupment from government providers and regulatory scrutiny as well as civil and criminal liability. Stewart proposed adopting an aggressive remediation strategy, including a potential pause in billing activity until immediate corrective action could be put in place. However, Brown and Luthor rejected the idea of a billing pause as too costly.

Stewart directed the executive leadership team to draft a remediation plan to address the compliance issues. The clinical staff was given a companywide briefing in a conference call on May 9, 2022. In mid-May, Stewart formally recommended to Luthor and Brown that the company terminate its relationship with its third-party billing company, ReveSolv, on the grounds that it had failed to exercise adequate oversight of billing procedures. Luthor rejected the idea and instead proposed a strategy to keep ReveSolv on board until the CMS/IRS investigation ended in Nevada, but to deceptively plant the seed with regulators that ReveSolv was the source of any billing irregularities. Stewart told Luthor that he opposed this course of action, but Luthor stood by his plan to falsely blame the third-party biller in the interests of avoiding legal exposure.

On June 1, 2022, within approximately two weeks of Stewart's disagreement with Luthor over the path forward given the evidence of billing irregularities, and three weeks after Stewart took substantial steps to stop a pattern of widespread billing and

coding violations, Brown, Golden Victory's co-owner, suddenly notified Stewart that he was being terminated immediately. The ostensible grounds were that there were allegations against Stewart of "racism and sexism" from "multiple employees" and that there was reason to believe Stewart had falsified company timekeeping records, allegations which are categorically false. Golden Victory's personnel handbook contains a detailed protocol for investigating employee allegations regarding their chain of command. The company did not follow its handbook or initiate any interview or evidence- gathering from Stewart. Stewart was given no opportunity to rebut or address these claims, which the owners presented to him for the first time on the day of his termination, within weeks after he took aggressive steps to combat billing and coding irregularities.

The written notice of termination provided to Stewart invoked Section 14(a) of Stewart's employment agreement, executed effective November 9, 2021, which provides for separation by mutual written agreement. Under the terms of the agreement, a separation or termination within one year of hire that is not for cause creates the obligation of payment of the base salary for a period of six months. Stewart was therefore entitled to continuing compensation based on his base salary of $250,000 until December 2022. Separation by "mutual agreement" is by definition not a termination for cause, the sole criteria in the agreement for voiding the obligatory payment schedule in 14(c)(ii). But rather than honor the terms of Stewart's employment agreement, Golden Victory offered Stewart a "lump sum equal to [Stewart's] pay rate for eight weeks (40 business days)." For Stewart, the promised severance would have equaled

roughly $38,461.00, less than a third of the $125,000 severance promised in Stewart's agreement.

Stewart now moves this Court for an entry of default judgment against Golden Victory, pursuant to Rule 55(b).

## III. LEGAL STANDARD

At a party's request, a court may enter default judgment against a party who "has failed to plead or otherwise defend." *Streambed Props. III, LLC v. Sexton Lofts, LLC,* 397 F.R.D. 349, 368 (D. Minn. 2013) (quoting *Norsyn, Inc. v. Desai,* 351 F.3d 825, 828 (8th Cir. 2003) (citing Fed. R. Civ. P. 55(a)–(b))). Federal Rule of Civil Procedure 55 requires two steps: "first, pursuant to Rule 55(a), the party seeking a default judgment must have the clerk enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend; second, pursuant to Rule 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the rule." *First Bank & Trust v. Greene Enter.,* LLC, 2014 WL 3732016, at *1 (D.S.D. July 25, 2014) (quoting *Dahl v. Kanawha Inv. Holding Co.,* 161 F.R.D. 673, 683 (N.D. Iowa 1995)).

There is a "judicial preference for adjudication on the merits." *Belcourt Pub. Sch. Dist. v. Davis,* 786 F.3d 653, 661 (8th Cir. 2015). However, "[i]t is well-settled in this Circuit that a corporation or other artificial business entity cannot appear pro se and may only appear through counsel." *Deluxe Small Bus. Sales, Inc. v. Findley,* No. 11-CV-1449 (JNE/SER), 2012 WL 13047581, at *3 (D. Minn. Mar. 28, 2012). The entry of default

judgment is proper where a corporate defendant fails to retain counsel. *See Forsythe v. Hales,* 255 F.3d 487, 490 (8th Cir. 2001).

## IV. ARGUMENT

### A. Defendant is a Corporation Without Counsel and Cannot Appear *Pro Se*

The Clerk of Court entered default against Golden Victory on December 4th, 2023 [ECF No. 44]. Stewart now seeks a default judgment from the Court pursuant to Rule 55(b)(2). Because Golden Victory cannot appear in a litigation *pro se*, default judgment must be entered against it. *See Deluxe Small Bus. Sales*, 2012 WL 13047581, at *3; *see also 3M Co. v. Darlet-Marchante-Technologie SA*, No. 08-CV-827 (JNE/SRN), 2010 WL 3733885, at *3 (D. Minn. Aug. 18, 2010).

Counsel for Golden Victory filed a Motion to Withdraw as Counsel, which was granted by Magistrate Judge Brisbois on September 22, 2023. [ECF No. 40]. In its Order, the Court gave Golden Victory 30 days to retain counsel and provide notice to the Court of the same. Golden Victory did not file any notice of representation by counsel with the Court by October 22, 2023, nor has it notified the Court or Plaintiff's counsel of any such representation at any time since October 22, 2023. Thus, Golden Victory remains unrepresented by counsel.

Because Golden Victory has failed to retain counsel, default judgment should be entered against it.

### B. Stewart is Entitled to Monetary Damages.

This Court may determine the amount of damages to be awarded to Stewart after

the presentation of testimony and evidence at the hearing on the Motion for Default Judgment. "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Stephenson v. El-Batrawi*, 524 F.3d 907, 915 (8th Cir. 2008) (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)).

As a result of Defendant's illegal retaliation against Stewart in violation of the FCA, and its breach of Stewart's employment agreement, Stewart has suffered significant damages. Specifically, Stewart seeks the following categories of damages:

1. Backpay;[1]
2. Damages for emotional distress;[2]
3. Reasonable attorneys' fees and costs;[3]
4. Interest on the award of back pay at the rate of 5.05% from June 1, 2022 through the date of the Court's Order;[4] and

[1] 31 U.S.C. § 3730(h) (prevailing employees entitled to "all relief necessary to make that employee … whole" for FCA retaliation claims); *Hammond v. Northland Counseling Ctr., Inc.,* 218 F.3d 886, 892 (8th Cir. 2000) (awarding back pay in FCA retaliation claim).
[2] *Hammond v. Northland Counseling Ctr., Inc.,* 218 F.3d 886, 893 (8th Cir. 2000) (holding that "[d]amages for emotional distress caused by an employer's retaliatory conduct [for FCA retaliation claims]" are provided for under § 3730(h).
[3] 31 U.S.C. § 3730(h) (prevailing plaintiffs entitled to "litigation costs and reasonable attorneys' fees.").
[4] The appropriate general standard for the rate of prejudgment interest on an FCA plaintiff's back pay is the rate provided by 28 U.S.C. § 1961(a) ("a rate equal to the weekly average 1–year constant maturity Treasure yield, as published by the Board of Governors of the Federal Reserve System"). *Wilkins v. St. Louis Hous. Auth.,* 198 F. Supp. 2d 1080, 1090 (E.D. Mo. 2001), aff'd, 314 F.3d 927 (8th Cir. 2002). "This rate shall be compounded annually…from the effective date of the Plaintiff's termination through the [date of the court's order of judgment]." *Id.* The current weekly average 1-year constant maturity

5. Liquidated damages in an amount equal to two times the award of back pay, interest on the backpay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.[5]

Stewart will provide testimony and evidence regarding these damages at the hearing to be held by the Court on January 16, 2024.

## V. CONCLUSION

Defendant has chosen to violate a Court Order requiring the Company to retain counsel. The Clerk of Court entered default against Golden Victory on December 4th, 2023. [Doc. No. 44]. For the foregoing reasons and because a corporate defendant may not appear *pro se*, Stewart respectfully requests that this Court grant his Motion for Default Judgment against Defendant Golden Victory Medical LLC.

Respectfully submitted,

Dated: December 5, 2023

*/s/ Emma R. Denny*
Emma R. Denny, #395334
Artur Davis #ASB-3672-D56A
(Admitted Pro Hac Vice)
HKM EMPLOYMENT ATTORNEYS, LLP
222 South 9th Street, Suite 430
Minneapolis, MN 55402
Telephone: (612) 337-1934
edenny@hkm.com
adavis@hkm.com

ATTORNEYS FOR PLAINTIFF

treasury yield, as of December 5, 2023, as published by the Board of Governors of the Federal Reserve System, is 5.05%. https://www.federalreserve.gov/releases/h15/.

[5] *Id.* (prevailing plaintiffs entitled to "2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.").